```
                UNITED STATES DISTRICT COURT
                   DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| HOLMAN ENTERPRISES, HOLMAN LEASING & RENTAL, ROBERT DI BELLA, and IRIS NATALE,<br><br>          Plaintiffs,<br><br>     v.<br><br>FIDELITY AND GUARANTY INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY, LIBERTY MUTUAL FIRE INSURANCE COMPANY, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and UNITED STATES FIDELITY AND GUARANTY COMPANY,<br><br>          Defendants. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 06-6029 (JEI)<br><br>**OPINION** |

**APPEARANCES:**

ARCHER & GREINER, P.C.
By: Ellis I. Medoway, Esq.
    Edward J. Kelleher, Esq.
One Centennial Square
P.O. Box 3000
Haddonfield, NJ 08033-0968
     Counsel for Plaintiffs

DRINKER BIDDLE & REATH LLP
By: Mark D. Sheridan, Esq.
500 Campus Drive
Florham Park, NJ 07932-1047
     Counsel for Defendant National Union Fire Insurance Company
     of Pittsburgh, PA

**IRENAS**, Senior District Judge:

   Before the Court are Defendant National Union Fire Insurance Company of Pittsburgh, PA's ("National Union") Motion for Summary

Judgment (Docket No. 39) and Plaintiffs' (the "Holman Parties") Cross-Motion for Partial Summary Judgment (Docket No. 43).[1]  The case involves a dispute over whether National Union's commercial umbrella liability policy (the "Umbrella Policy") provides insurance coverage to the Holman Parties for claims against them in a separate personal injury lawsuit pending in state court.  National Union asserts that the Umbrella Policy simply does not provide coverage for the claims.  The Holman Parties' cross-motion seeks a declaration of defense in connection with the state court litigation and summary judgment on their breach of contract claim.[2]  For the reasons set forth below, the Court will grant National Union's motion and will deny the Holman Parties' cross-motion.

**I.**

On July 20, 2005, Patricia Clinton, through her guardians, and other plaintiffs filed an amended complaint against, among others, the Holman Parties in the Superior Court of New Jersey, Law Division, Camden County (the "Underlying Action").[3]  (Df's

---

[1]  This case was properly removed from the Superior Court of New Jersey on December 15, 2006, under 28 U.S.C. § 1446.  This Court has jurisdiction under 28 U.S.C. § 1332.

[2]  The cross-motion does not raise the issue of indemnification under the Umbrella Policy.

[3]  The suit was initiated in 2004.  *Clinton v. Clinton*, CAM L-4498-04 (N.J. Super. Ct. Law Div. 2004).  The Holman Parties

Ex. A.)  The complaint alleged that on July 16, 2003, Rowland Clinton,[4] a co-defendant in the Underlying Action, rented a passenger van from the Holman Parties.  (*Id.*, 2d Count, ¶ 6; *see also* Pls' Ex. A (rental agreement).)  In connection with the vehicle rental, Mr. Clinton allegedly purchased a supplemental liability insurance policy that was underwritten by the Philadelphia Indemnity Insurance Companies.[5]  (Df's Ex. A, 2d Count, ¶¶ 5-7; *see also* Pls' Ex. B.)  Plaintiffs in the Underlying Action claim that the supplemental policy provided up to one million dollars in liability coverage for "personal injury or death to another human being, including passengers."  (Df's Ex. A, 2d Count, ¶ 6.)

On July 25, 2003, plaintiffs in the Underlying Action were passengers in the rental van when Mr. Clinton was allegedly driving in a "careless, reckless and negligent manner."  (*Id.*, 1st Count, ¶ 1.)  They allege that as a result of his negligent driving, the vehicle was involved in an accident in which they

---

state that a second amended complaint joining additional parties was recently filed in the Underlying Action, but that the claims against them remain the same.

[4]  The record implies that Rowland Clinton is related to all plaintiffs in the Underlying Action, though the exact relationship between each of them is not clear.

[5]  The record also reflects that, as part of an overall "Protection Package," Mr. Clinton purchased collision-comprehensive coverage with a $1000 deductible.  (*See* Df's Ex. A, 2d Count, ¶¶ 6, 12; Pls' Ex. C.)  However, this fact is not relevant to the case before the Court.

were seriously injured.[6]  (*Id.*, ¶ 2.)

Under the terms of the supplemental policy, the Philadelphia Indemnity Insurance Companies denied liability coverage for the injuries sustained by Patricia and Ellen Clinton[7] because of an exclusion for "'[b]odily injury' to . . . the blood relatives or family of the 'renter' . . . if such relatives or family reside in the same household with the 'renter'."  (*Id.*, 2d Count, ¶ 15; Pls' Ex. B, § 1(E)(3).)  However, the Underlying Action includes claims against the Holman Parties for negligently failing to provide accurate and complete information as to the scope of the supplemental policy's coverage when Mr. Clinton purchased it, for affirmatively making false and fraudulent misrepresentations as to the scope of coverage, and for violating the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq.*  (Df's Ex. A, 2d Count, 3d Count, 9th Count)  Based on these claims, plaintiffs in the Underlying Action seek damages in part for the

---

[6] Later in the amended complaint, plaintiffs in the Underlying Action state that only Patricia, Ellen and Catherine Clinton were injured in the accident. (Df's Ex. A, 2d Count, ¶ 12.)  While the complaint is not consistent in its delineation of which plaintiffs were injured, and accordingly which plaintiffs sought recovery under the supplemental liability policy, this fact does not affect the Court's analysis of the present motions.

[7] As of the time the amended complaint was filed, plaintiffs in the Underlying Action allege that no decision had been rendered as to liability coverage for injuries sustained by Catherine Clinton.  (Df's Ex. A, 2d Count, ¶ 15.)  The amended complaint does not mention liability coverage for possible injuries sustained by Michael or David Clinton.

amount of liability coverage, one million dollars, that they were unable to recover as third-party beneficiaries under the supplemental policy because of the Holman Parties' alleged actions.  (*Id.*)

On September 27, 2005, the Holman Parties, through their insurance broker, notified National Union of the claims asserted by the plaintiffs in the Underlying Action and sought defense and indemnification under the terms of the Umbrella Policy.[8]  (Df's Ex. C.)  National Union acknowledged receipt of the Holman Parties' notice of loss on December 13, 2005.  (Df's Ex. D.)  On May 4, 2006, National Union, through its claims administrator, sent a letter detailing its understanding of the Underlying Action and the Umbrella Policy's relevant provisions.  (Df's Ex. E.)  Based on an analysis of the Umbrella Policy's terms, National Union denied coverage to the Holman Parties.  (*Id.*)

The Umbrella Policy provides:

> We [National Union] will pay on behalf of the Insured [the Holman Parties] those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay by reason of liability imposed by law or assumed by the Insured under an Insured Contract because of Bodily Injury . . . that takes place during the Policy Period and is caused by an Occurrence happening anywhere in the world. . . .

(Df's Ex. B, § 1-"Coverage".)  It further states that National

---

[8]  The Umbrella Policy's coverage period was from October 1, 2002, through October 1, 2003.  (Df's Ex. B, Item 2.)  Thus, there is no dispute that the Umbrella Policy was in effect at the time of the Holman Parties' alleged actions.

5

Union "shall have the right and duty to defend any claim or suit seeking damages covered by the terms and conditions of this policy."  (*Id.*, § 2(A)-"Defense".)

> An "Insured Contract" is defined by the Umbrella Policy as
>
> any oral or written contract or agreement entered into by you [the Holman Parties] and pertaining to your business under which you assume the tort liability of another to pay for Bodily Injury . . . to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.[9]

(*Id.*, § 4(F)-"Definitions".)  "Bodily Injury" is defined simply as "bodily injury, sickness, disability or disease," and also includes "mental injury, mental anguish, humiliation, shock or

---

[9]  Despite the Holman Parties' argument to the contrary, there is no evidence in the record that an Insured Contract existed between themselves and Mr. Clinton.  Any reference in the amended complaint to a second insurance policy is to the collision-comprehensive coverage purchased by Mr. Clinton as part of an overall "Protection Package," which has no bearing on this case or the Underlying Action.  *See supra* n.3.  As to the supplemental liability insurance policy purchased by Mr. Clinton, whether under the express written terms of the policy or the terms embodied by the alleged representations or misrepresentations of the Holman Parties, there was no contract or agreement under which the Holman Parties assumed the tort liability of Mr. Clinton to pay for bodily injury to another.  Rather, the Holman Parties sold Mr. Clinton insurance, underwritten by the Philadelphia Indemnity Insurance Companies, to cover any liability that he, and he alone, might incur for bodily injury to another.  The dispute in the Underlying Action is with regard to representations or misrepresentations made about the scope of that coverage; it is not whether the Holman Parties assumed the tort liability of Mr. Clinton.  Accordingly, because there was no Insured Contract, the only possible coverage afforded to the Holman Parties under the Umbrella Policy is for "those sums . . . that the Insured becomes legally obligated to pay by reason of liability imposed by law . . . because of Bodily Injury . . . that . . . is caused by an Occurrence."

death if directly resulting from bodily injury, sickness, disability or disease." (*Id.*, § 4(C).) Finally, an "Occurrence," as it relates to Bodily Injury, means "an accident, including continuous or repeated exposure to conditions, which results in Bodily Injury . . . neither expected nor intended from the standpoint of the Insured."[10] (*Id.*, § 4(H)(1).)

The Holman Parties filed suit against National Union and the

---

[10] Further limiting the issue before the Court, there can be no dispute that there was "an accident . . . which result[ed] in Bodily Injury [to plaintiffs in the Underlying Action] neither expected nor intended from the standpoint of the [Holman Parties]." National Union's argument that the Underlying Action does not allege injury arising from an Occurrence misses the point that the term itself, as defined by the Umbrella Policy, does not look to the intentional nature of the *actions* of the Insured in determining whether there was an Occurrence. Instead the term requires an analysis as to whether the Insured intended to cause the Bodily Injury that results from an accident. *See SL Indus., Inc. v. Am. Motorists Ins. Co.*, 607 A.2d 1266, 1276 (N.J. 1992) (holding that in interpreting the meaning of "occurrence" within an insurance policy it is proper to place an "emphasis on the insured's intent to cause the injury rather than on its intent to commit the act that resulted in the injury"); *Voorhees v. Preferred Mut. Ins. Co.*, 607 A.2d 1255, 1264 (N.J. 1992) ("We adhere to the prevalent New Jersey rule and hold that the accidental nature of an occurrence is determined by analyzing whether the alleged wrongdoer intended or expected to cause an injury.").

Here, the Underlying Action alleges that Mr. Clinton drove the rental van in a negligent manner and caused an accident that resulted in bodily injury to the underlying plaintiffs. Clearly the bodily injury that arose from the accident was "neither expected nor intended from the standpoint of the [Holman Parties]." They did not intend for plaintiffs in the Underlying Action to be injured by the alleged negligent driving of Mr. Clinton. Thus, there was an Occurrence, and the only issue before the Court is whether National Union's Umbrella Policy provides the Holman Parties with coverage for "those sums . . . that [they] become[] legally obligated to pay by reason of liability imposed by law . . . because of Bodily Injury."

other named Defendants in the Superior Court of New Jersey, Law Division, Camden County on October 23, 2006.  The case was removed to this Court on December 15, 2006.  In an amended complaint filed on April 13, 2007, the Holman Parties sought a declaratory judgment that National Union's Umbrella Policy provides coverage for the claims in the Underlying Action, thereby entitling them to full defense and indemnification; they further alleged that National Union breached the insurance contract by denying coverage.  National Union now moves for summary judgment, arguing that the Umbrella Policy does not provide coverage to the Holman Parties.  The Holman Parties cross-move for summary judgment on their breach of contract claim and seek a declaration of National Union's duty to defend in the Underlying Action.

**II.**

"Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).

In deciding a motion for summary judgment, the Court must

construe the facts and inferences in a light most favorable to the nonmoving party.  *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).  "'With respect to an issue on which the nonmoving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.'"  *Conoshenti v. Pub. Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*, 477 U.S. at 325).  The role of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The summary judgment standard is not affected when the parties file cross-motions for summary judgment.  *See Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987).  Such motions "'are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.'"  *Transportes Ferreos de Venez. II CA v. NKK Corp.*, 239 F.3d 555, 560 (3d Cir. 2001) (quoting *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968)).  If after review of cross-motions for summary

9

judgment the record reveals no genuine issues of material fact, then judgment will be entered in favor of the deserving party in light of the law and undisputed facts. *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir. 1998).

### III.

Under New Jersey law,[11]

> [T]he duty to defend comes into being when the complaint states a claim constituting a risk insured against. Whether an insurer has a duty to defend is determined by comparing the allegations in the complaint with the language of the policy. When the two correspond, the duty to defend arises, irrespective of the claim's actual merit. If the complaint is ambiguous, doubts should be resolved in favor of the insured and thus in favor of coverage. When multiple alternatives [sic] causes of action are stated, the duty to defend will continue until every covered claim is eliminated.

*Voorhees*, 607 A.2d at 1259 (alteration in original) (citations and internal quotation marks omitted).

While the parties agree that the amended complaint in the Underlying Action is far from a model of clarity, the claims against the Holman Parties are generally not in dispute. Plaintiffs in the Underlying Action contend that the Holman Parties were negligent and, alternatively, intentionally fraudulent in leading them to believe that the scope of coverage of the supplemental liability policy purchased by Mr. Clinton was

---

[11] The parties agree that New Jersey law applies to this case, and the Court finds no facts in the record to determine otherwise.

10

broader than the actual coverage provided by the policy. The question before the Court is whether the allegations in the amended complaint correspond with the language of the Umbrella Policy, which provides coverage for "those sums . . . that the [Holman Parties] become[] legally obligated to pay by reason of liability imposed by law . . . because of Bodily Injury."

The Court holds that the allegations against the Holman Parties do not correspond with the terms of the Umbrella Policy. Any sums that the Holman Parties become legally obligated to pay by reason of liability imposed by law will result because of their negligent or fraudulent representations, misrepresentations or omissions with regard to the supplemental liability insurance policy purchased by Mr. Clinton; no liability will be imposed by law *because of* Bodily Injury to plaintiffs in the Underlying Action.[12] Plaintiffs' claims against the Holman Parties go to

---

[12] To illustrate the distinction, consider the result if the Holman Parties fully and clearly disclosed all terms of the supplemental liability policy or if Mr. Clinton had simply declined the supplemental coverage. In either hypothetical, assuming Mr. Clinton and underlying plaintiffs were still involved in an accident, no cause of action could have been brought against the Holman Parties because there would no longer be a factual basis for alleging negligent or fraudulent misrepresentation. Nonetheless, plaintiffs in the Underlying Action would still have suffered Bodily Injury. Thus, there is no direct *causal* connection between their current claims against the Holman Parties and the Bodily Injury that they suffered. It is obviously true that the accident and subsequent injuries served as the catalyst for bringing the claims against the Holman Parties; but the law will not impose liability on the Holman Parties *because of* the injuries.

11

the economic loss that they suffered because they could not recover under the supplemental policy, rather than to the full extent of damages that they suffered because of Bodily Injury.[13] While there is no doubt that, assuming the allegations are true, plaintiffs in the Underlying Action suffered "Bodily Injury" and that the law may impose liability on another party because of that injury, the law will not impose liability *on the Holman Parties* "because of Bodily Injury."[14]

---

[13] This fact is recognized in the amended complaint filed in the Underlying Action, where plaintiffs repeatedly state that the value of their injuries *exceeds* one million dollars, but that one million dollars is the "maximum amount of recovery allowed under the [supplemental liability] policy." (*See, e.g.*, Df's Ex. A, 2d Count, ¶¶ 16-18.)

[14] The Holman Parties also argue that their reasonable expectations as the Insured should be considered. *See Zacarias v. Allstate Ins. Co.*, 775 A.2d 1262, 1264 (N.J. 2001) ("When there is ambiguity in an insurance contract, courts interpret the contract to comport with the reasonable expectations of the insured, even if a close reading of the written text reveals a contrary meaning.") While this Court does not find any ambiguity in the terms of the Umbrella Policy, the Holman Parties' argument raises a valid point that should be briefly addressed.

In determining whether the Umbrella Policy provided the Holman Parties with coverage for the claims in the Underlying Action, this Court was careful to consider exactly what National Union's insurance policy was intended to cover if it did not cover the claims alleged in the Underlying Action. This Court wants to ensure that the Umbrella Policy was meaningful and not merely illusory. *Cf. Sparks v. St. Paul Ins. Co.*, 495 A.2d 406, 415 (N.J. 1985) ("Because insurance contracts are contracts of adhesion, the terms of which are not customarily bargained for, courts have a special responsibility to prevent the marketing of policies that provide unrealistic and inadequate coverage.").

It is clear to the Court that the Umbrella Policy would provide coverage for a wide range of products liability actions that the Holman Parties, as renters of automobiles, might face. A significant duty undertaken by the Holman Parties is to ensure

**IV.**

For the reasons set forth above, National Union's Motion for Summary Judgment will be granted and the Holman Parties' Cross-Motion for Partial Summary Judgment will be denied. The Court will issue an appropriate Order.

Dated: June 6, 2008

                                          s/ Joseph E. Irenas
                                          **JOSEPH E. IRENAS, S.U.S.D.J.**

---

that its vehicles are in a safe and operable condition before customers enter rental agreements and begin driving the vehicles. If the Holman Parties are negligent in maintaining vehicles and they allow customers to drive defective vehicles, and the customers are subsequently injured after an accident caused by a vehicle defect related to negligent maintenance, the Holman Parties might become "legally obligated to pay [damages] by reason of liability imposed by law . . . because of Bodily Injury." In this situation there would be a direct causal link between the Holman Parties' actions and the Bodily Injury.