```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| HOLMAN ENTERPRISES, HOLMAN LEASING & RENTAL, ROBERT DI BELLA, and IRIS NATALE,<br><br>    Plaintiffs,<br><br>   v.<br><br>FIDELITY AND GUARANTY INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY, LIBERTY MUTUAL FIRE INSURANCE COMPANY, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and UNITED STATES FIDELITY AND GUARANTY COMPANY,<br><br>    Defendants. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 06-6029 (JEI)<br><br>**OPINION** |

**APPEARANCES:**

ARCHER & GREINER, P.C.
By: Ellis I. Medoway, Esq.
    Edward J. Kelleher, Esq.
One Centennial Square
P.O. Box 3000
Haddonfield, NJ 08033
    Counsel for Plaintiffs

L'ABBATE, BALKAN, COLAVITA & CONTINI, L.L.P.
By: Gretchen B. Connard, Esq.
7 Regent Street, Suite 711
Livingston, NJ 07039
    Counsel for Defendants Fidelity and Guaranty Insurance
    Company and United States Fidelity and Guaranty Company

**IRENAS**, Senior District Judge:

   This declaratory action concerning insurance coverage arises out of a single-vehicle accident that occurred on July 25, 2003

involving a passenger van rented by Holman Leasing & Rental to Rowland Clinton, which resulted in serious injuries to several of Clinton's family members. The injured passengers brought suit in state court against Clinton and others, including Plaintiffs, to recover for their injuries (the "Underlying Action"), and the parties seek a declaratory judgment herein assigning coverage for the underlying state court action. Presently before the Court is Plaintiffs Holman Leasing & Rental, Holman Enterprises, Robert Di Bella, and Iris Natale's (the "Holman Plaintiffs") Motion to Strike Defendants Fidelity and Guaranty Insurance Company and United States Fidelity and Guaranty Company's (collectively, the "Fidelity Defendants") Expert Report on Bad Faith (Docket No. 50). For the reasons set forth below, the Court will grant the Holman Plaintiffs' motion.

I.

The underlying facts concerning this action are set forth more fully in *Holman Enterprises v. Fidelity and Guaranty Insurance Co.*, No. 06-6029, 2008 U.S. Dist. LEXIS 44609, at *2-11 (D.N.J. June 6, 2008)(Docket No. 58). As the Court will assume familiarity with its prior opinion, the Court will only provide those additional facts pertinent to the present motion.

The van rented by Holman Leasing & Rental ("Holman") to Clinton was registered with the Dealer Daily Rental Insurance

2

("DDRI") program, which was underwritten by the Fidelity Defendants.[1]  (Holman Plaintiffs' Brief at 2.)  While the specific parameters of the DDRI program are not provided, it appears that, by virtue of the van's registration with the DDRI program, the Fidelity Defendants provided two types of insurance coverage for the van to Holman: (1) Fidelity and Guaranty Insurance Company ("Fidelity") issued a Commercial Automobile Insurance Policy, and (2) United States Fidelity and Guaranty Company ("USF&G") issued a ten million dollar excess policy. (Amended Complaint ¶¶ 8-12.)  Sedgwick Claims Management Services, Inc. ("Sedgwick") served as the third-party claims administrator for losses involving rental cars registered in the DDRI program. (Kelleher Decl., Ex. Q.)[2]  Thus, Sedgwick acted as the third-party claims administrator for the Fidelity Defendants for the claim made by Holman concerning the Clinton accident.

Shortly after Clinton's accident, by July 30, 2003, Holman provided notice to Sedgwick of its claim.  Sedgwick retained Wilson, Esler, Moskowitz, Edelman & Dicker, LLP ("Wilson Esler") to handle the claim.  (Kelleher Decl., Ex. D.)  An amended complaint in the Underlying Action was served on the Holman

---

[1] Several other policies issued by other Defendants are also at issue in the present action, but are not implicated by this motion.

[2] References to the "Kelleher Decl." pertain to the Declaration of Edward J. Kelleher submitted in support of the Holman Plaintiffs' motion.

3

Plaintiffs sometime in late summer 2005. Sedgwick requested that Wilson Esler file an answer to the amended complaint on behalf of Sedgwick and the Holman Plaintiffs. (*Id.*, Ex. E.) However, as the Holman Plaintiffs were apparently not aware that Wilson Esler had been retained to handle the Underlying Action, the Holman Plaintiffs' retained their current counsel, Archer & Greiner, P.C. ("Archer"), to defend them in the Underlying Action. (Holman Plaintiffs' Brief at 4.)

From October 13, 2005 to August 17, 2006, representatives from Archer, Wilson Esler, Sedgwick, and Holman corresponded regarding coverage of the claim and representation of the Holman Plaintiffs. (*See* Kelleher Decl., Exs. F to O.) Of particular importance is an April 4, 2006 letter from Adele Albright, a Senior Claims Manager with Sedgwick, to Holman's General Counsel, Kathy Mullins, which the Fidelity Defendants classify as a reservation of rights letter.[3] (*Id.*, Ex. N.) Such

---

[3] "Under New Jersey law, if an insurer intends to dispute its coverage obligation, the carrier is not permitted to assume the defense unless the insured expressly agrees to a specific reservation of rights." *Witco Corp. v. Travelers Indem. Co.*, No. 86-2907, 1987 U.S. Dist. LEXIS 14295, at *26 (D.N.J. May 1, 1987). In relevant part, the April 4, 2006 letter states:

> Our coverage for this loss is limited to only the [minimal financial responsibility] of 15/30k and if a verdict is rendered in excess of that amount, we want to make sure all carriers are properly placed on notice to protect the interest of Holman Enterprise, Holman Leasing & Rental, Inc. as well as its employees, Robert Di Bella and Iris Natale. It is also possible that a verdict or allegation placed against these entities or

4

correspondence culminated with an August 17, 2006 letter from the Fidelity Defendants' coverage counsel, L'Abbate, Balkan, Colavito & Contini, to Holman to advise that coverage under the Fidelity and USF&G policies for the Holman Plaintiffs was being denied. (*Id.*, Ex. O.)[4]

On October 23, 2006, the Holman Plaintiffs filed a Complaint for Declaratory Relief and Other Judgment in the Superior Court of New Jersey, Law Division, which was properly removed to this Court under 28 U.S.C. § 1446 on December 16, 2006.[5] The Holman Plaintiffs seek a declaratory judgment for insurance coverage and assert four additional causes of action against the Fidelity Defendants in the present action – equitable estoppel, breach of contract, breach of fiduciary duty, and breach of the covenant of good faith and fair dealing.

---

> individuals, may not be covered under the conditions of
> the contract arising our [sic] of the rental program in
> which we handle such claims.

(Kelleher Decl., Ex. N.)

[4]Prior to the August 17, 2006 letter, there does not appear to be any correspondence that suggests a limitation on the defense being provided to the Holman Plaintiffs' by the Fidelity Defendants.

[5]This Court has jurisdiction under 28 U.S.C. § 1332.

**II.**

The Fidelity Defendants have submitted an expert report that they intend to use at trial prepared by John Saulino, Principal of RMG Consulting, Inc. (Saulino Report at 1.)[6]  Saulino has more than thirty-eight years of experience in the insurance industry, with a particular emphasis on primary and excess claim responsibilities.[7]  In his report, Saulino ultimately concludes that nothing in the record would support the Holman Plaintiffs' breach of the covenant of good faith and fair dealing claim. (Saulino Report at 4.)

In support of his thesis regarding bad faith, Saulino makes several lesser conclusions: (1) Sedgwick properly determined that Clinton's personal auto policy with State Farm would provide no-fault benefits; (2) the April 4, 2006 letter from Adele Albright, Senior Claims Manager, constituted a reservation of rights; (3) there is no coverage under the USF&G Excess Policy; and, (4) Fidelity should have denied coverage to Holman under the terms of its auto policy.  (Saulino Report at 4, 7, 11, & 15.)  Saulino also identifies seven major "issues and circumstances" that were involved with this claim, which served as the basis for his

---

[6]The expert witness report prepared by John L. Saulino was submitted as Exhibit A to the Kelleher Declaration.

[7]Saulino has worked as an insurance consultant for the past eight years and has provided deposition and expert witness testimony on several occasions.  (Saulino Report at 17 & 20-23.)

conclusions:

> 1. The accident was a single vehicle event and only related passengers were injured[.]
> 2. Plaintiff's Amended Complaint [in the Underlying Action] was being handled under the DDRI program for defense, but there was no acceptance of coverage[.]
> 3. Holman's General Counsel, who was on notice of the accident, and acted as the point person for the Holman defendants for communication regarding coverage and the underlying investigation and defense was not familiar with the rental program or any of the insurance that may have been applicable to the loss[.]
> 4. Holman's General Counsel similarly misinterpreted the basis of the defense being provided by Fidelity[.]
> 5. Other potentially applicable policies to this incident provided no coverage to Holman and its employees, and there was no specific Errors and Omissions (E&O) coverage[.]
> 6. Communication both verbal and written among various parties was often misunderstood or misinterpreted partly due to the inexperience of Holman personnel, structure, and poor internal coordination[.]
> 7. In light of all the above and other factors, there is no question that the history is confused and mistakes were made by numerous parties.  Despite any mistakes that may have been made by Fidelity and/or USF&G and/or any of their agents, there was no breach of any duty owed to Holman and its employees[.]

(Saulino Report at 3.)[8]

The Holman Plaintiffs seek to strike the Saulino Report in its entirety on the basis that it is an inadmissible net

---

[8] Saulino bases his conclusions on a review of the following documents: the applicable insurance policies, correspondence between Sedgwick and Holman's General Counsel, correspondence between the Fidelity Defendants' counsel and counsel for the Holman Plaintiffs, declination of coverage letters from other defendants, a copy of the rental agreement between Holman and Clinton, "various correspondence from Holman and Fidelity productions," and deposition transcripts from various Sedgwick and Holman witnesses. (Saulino Report at 24-25.)

opinion.[9]  The Holman Plaintiffs argue that the report is based on speculation, the report is based on insufficient facts, and that the report's legal conclusions are improper.  The Fidelity Defendants deny each of these arguments.

### III.

"Under the Federal Rules of Evidence, it is the role of the trial judge to act as a 'gatekeeper' to ensure that any and all expert testimony or evidence is not only relevant, but also reliable."  *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997)(citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)).  Federal Rule of Evidence 702 "has three major requirements: (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge;[10] and (3) the expert's testimony must assist the trier of fact."  *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir.

---

[9] The Holman Plaintiffs have not challenged the qualifications of Saulino.

[10] The Court notes that the use of expert testimony by Saulino is appropriate here given the subject matter, that of insurance law, which is an area of specialized knowledge.  *See NN&R, Inc. v. One Beacon Ins. Group*, 2006 U.S. Dist. LEXIS 70833, at *6 (D.N.J. Sept. 29, 2006) (noting that an expert on insurance issues may rely upon his own industry practice).

2008).[11]   Admissibility under the third requirement, the "fit" requirement, "depends in part on 'the proffered connection between the scientific research or test result to be presented and particular disputed factual issues in the case.'"  *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 743 (3d Cir. 1994) (quoting *United States v. Downing*, 753 F.2d 1224, 1237 (3d Cir. 1985)).  "The burden is on the proponent of the testimony to prove its admissibility by a preponderance of proof."  *NN&R, Inc. v. One Beacon Ins. Group*, No. 03-5011, 2006 U.S. Dist. LEXIS 70833, at *6 (D.N.J. Sept. 29, 2006).

"An expert opinion is not admissible if the court concludes that an opinion based upon particular facts cannot be grounded upon those facts."  *Fedorczyk v. Caribbean Cruise Lines, Ltd.*, 82 F.3d 69, 75 (3d Cir. 1996).  Further, "if an expert opinion is based on speculation or conjecture, it may be stricken."  *Id.*; *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("But

---

[11]Rule 702 specifically provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").[12]

The district court must limit expert testimony so as to not allow experts to opine on "what the law required" or "testify as to the governing law." *United States v. Leo*, 941 F.2d 181, 196-97 (3d Cir. 1991). This prohibition on experts testifying as to their own legal conclusions is "'so well established that it is often deemed a basic premise or assumption of evidence law – a kind of axiomatic principle.' In fact, every circuit has explicitly held that experts may not invade the court's province by testifying on issues of law." *Casper v. SMG*, 389 F. Supp. 2d 618, 621 (D.N.J. 2005) (quoting *In re Initial Public Offering*

---

[12]The Holman Plaintiffs argue that the Saulino Report should be stricken as a net opinion. Under New Jersey law, an "expert's bare conclusions, unsupported by factual evidence" is an inadmissable net opinion. *Buckelew v. Grossbard*, 435 A.2d 1150, 1156 (N.J. 1981). Yet, the "net opinion" rule is neither an evidentiary rule under the Federal Rules of Evidence nor a factor in the *Daubert* analysis. *Zeller v. J.C. Penney Co.*, No. 05-2546, 2008 U.S. Dist. LEXIS 25993, at *24 n.13 (D.N.J. Mar. 31, 2008). Instead, "[t]he net opinion rule is merely a restatement of the well-settled principle that an expert's bare conclusions are not admissible under [the fit requirement of] Rule 702 of the Federal Rules of Evidence." *Id*. Thus, the Court considers it proper to posit the Holman Plaintiffs' arguments under the fit requirement. *See Elcock v. Kmart Corp.*, 233 F.3d 734, 756 n.13 (3d Cir. 2000) (noting that an expert report that relies upon economic assumptions not present in case arguably fails to comply with fit requirement).

*Sec. Lit.,* 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001)).

Saulino's report is replete with legal conclusions and speculations that ultimately render his entire report deficient. Saulino's major thesis, that the Fidelity Defendants did not breach the covenant of good faith and fair dealing, is an obvious conclusion of law inappropriate for an expert report.  His conclusion implies some level of legal analysis on his part, and does not assist the factfinder toward resolution of the issues. *See Connolly v. ReliaStar Life Ins. Co.*, No. 03-5444, 2006 U.S. Dist. LEXIS 83440, at *46 n.32 (E.D. Pa. Nov. 13, 2006) (noting that it is "well settled" that ultimate conclusions regarding bad faith are not appropriate for expert opinions).

Further, Saulino concludes that, "while the Albright letter of April 4, 2006 was not a highly polished reservation of rights, it was intended as a reservation, and considering all the other communication afforded Holman, met the minimum requirements of a reservation under the circumstances." (Saulino Report at 7.) Although citations to insurance industry guidelines or treatises are not necessarily required, Saulino fails to even discuss the insurance industry's basic definition of what constitutes the "minimum requirements of a reservation."  Instead, he makes his conclusion based upon his perception of Albright's subjective intent when sending the letter as stated in her deposition testimony.

11

Likewise, Saulino opines regarding the availability of coverage under Clinton's personal State Farm auto policy and the USF&G and Fidelity policies and states that Fidelity should have denied coverage from the inception of the claim.  (Saulino Report at 15.)  The Court recognizes that the reasonableness of an insurer's denial of a claim and the availability of coverage would be appropriate subject matter for an expert witness on insurance issues.  *Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.*, No. 02-2116, 2006 U.S. Dist. LEXIS 1717, at *13 (W.D. Pa. Jan. 19, 2006)("[E]xpert testimony may be appropriate with respect to issues such as insurance claims adjusting procedure, an insurer's compliance with industry customs and standards, and whether the insurer lacked a reasonable basis for denying an insured's claim.").  However, Saulino has provided no analysis to support these blanket conclusions and only states that the Fidelity Defendants made a mistake by providing a defense to the Holman Plaintiffs initially.  (Saulino Report at 15.)  Without providing any sort of gauge for the basis of his decision, either from his own extensive experience in the industry or some industry standards or guidelines, Saulino's statements do nothing to assist the factfinder.

Finally, Saulino states that "[i]n my opinion, a reasonable insurance professional would have expected Holman, through its General Counsel to have been on notice of not only coverage

impediments, but that the Fidelity defense was being provided under reservation and with no commitment to coverage for the Holman defendants." (Saulino Report at 8.) Saulino further opines that "a reasonable insurance professional would have expected a company the size of Holman with a General Counsel and a Risk Manager to have had more than ordinary knowledge of insurance coverage and the potential impediments to same when a defense was offered with limitations." (Saulino Report at 14.) In support of such statements, Saulino merely summarizes the testimony of Albright and Holman's General Counsel and Risk Managers.

Saulino's expectations regarding the actions taken by the Holman Plaintiffs or Holman's General Counsel are speculative and filled with conjecture. Saulino does not provide any additional analysis or references to industry standards, and as such, these statements do not reflect his own expertise in the insurance industry.[13] *See NN&R, Inc.,* 2006 U.S. Dist. LEXIS, at *9-10 (striking expert's conclusion that the insured would have maintained an appropriate amount of insurance on a building had the insurer behaved differently).

Saulino's expert report is filled with legal conclusions and

---

[13]The Court further notes that the relevancy of statements regarding the actions of *Holman* is questionable given that the focus of the report is on whether the *Fidelity Defendants* acted in bad faith.

13

speculations, which will not assist the factfinder in understanding the complex insurance matters at issue in the case. It is merely a restatement of certain evidence without any insight into the expert's own analysis or bases for his opinion. As such, the report does not meet the fit requirement under the Federal Rules of Evidence.[14]

**IV.**

For the reasons set forth above, the Motion to Strike the Fidelity Defendants' Expert Witness Report will be granted. The Court will issue an appropriate Order.

Dated: June 30, 2008

                                        s/ *Joseph E. Irenas*
                                        **JOSEPH E. IRENAS, S.U.S.D.J.**

---

[14]Because the Court finds that the report should be stricken based on its legal conclusions and speculation, it will not address the Holman Plaintiffs' argument that the report is deficient because it does not reference certain correspondence between counsel for the Holman Plaintiffs' and Wilson Esler regarding the representation of the Holman Plaintiffs and the scope of insurance coverage in the Underlying Action.